IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 16, 2019 Session

**IN RE D.V. ET AL.**

**Appeal from the Juvenile Court for Hamilton County**
**No. 277713, 277714          Robert Philyaw, Judge**

_____

**No. E2018-01438-COA-R3-PT**
_____

J.V. (mother) and R.W. (father) have two children together, D.V. (child 1) and S.W. (child 2). In connection with a case involving the custody of the children, father attended a hearing in the trial court. He brought his children to the courthouse. While there, he was taken into custody and thereafter extradited to Michigan on outstanding warrants. Mother was not able to care for the children. As a consequence, the children remained in Hamilton County without a parent or legal guardian. The children were adjudicated dependent and neglected and placed in the custody of the Department of Children's Services. Father was later convicted in Michigan on four counts of criminal sexual conduct in the first degree; mother was identified as the victim. Father was sentenced to serve a minimum of fifteen years in prison. In 2017, DCS filed a petition to terminate mother and father's parental rights. Mother did not oppose the termination, but father did. The trial court found clear and convincing evidence to support DCS's petition to terminate the parties' parental rights. By the same quantum of proof, the court also found that termination is in the children's best interest. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Ardena J. Garth, Chattanooga, Tennessee, for the appellant, R.W.

No appearance by or on behalf of mother, J.V.

Herbert H. Slatery III, Attorney General and Reporter, and Erin A. Shackelford, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

-1-

Berry Foster, Chattanooga, Tennessee, Guardian ad Litem for D.V. and S.W.

**OPINION**

**I.**

The familial situation in this matter is atypical.[1] Father began dating the mother of J.V. when J.V. was approximately two-years old. Father and J.V.'s mother have two children together. Beginning when J.V. was a pre-teen and continuing through her teenage years, father engaged J.V. in sexual activity. In 2006, when J.V. was sixteen-years old, she became pregnant with their son, child 1. He was born on March 31, 2007, in Oakland, Michigan. No father was listed on the birth certificate.[2]

When J.V. was eighteen-years old, she became pregnant with her and father's daughter, child 2. The child was born on April 9, 2009, in Catoosa County, Georgia. Father was listed as the biological father on the birth certificate. Around this time, mother and father had a formal live-in relationship.

In 2010, mother and father separated. Mother and the children moved back to Michigan. While in Michigan, mother disclosed to a mental health counselor that father had sexual relations with her when she was a teenager. Following this disclosure, in 2011, mother made a formal complaint to Michigan police regarding the copulation that occurred between her and father prior to her reaching the age of consent. Father was not arrested until 2015.

In 2014, mother decided she was unable to properly care for the children. She gave the children to father. He brought them from Michigan to live with him in Tennessee. On January 26, 2015, Tennessee's Hamilton County Juvenile Court granted father temporary custody of the children pending a home study. On June 1, 2015, father returned to court for further hearing on his custody petitions; he was arrested there on outstanding Michigan warrants stemming from four counts of "criminal sexual conduct in the first degree." He was extradited to Michigan.

Following father's arrest, the children were present in Hamilton County, Tennessee without an effective parent or legal guardian. The court therefore found clear and convincing evidence that the children were dependent and neglected and committed them to DCS custody. The court further held that DCS was not the original petitioner and had no opportunity to provide preventative services; that there was clear and convincing evidence to believe the children were dependent and neglected within the meaning of the

---

[1] To avoid confusion, we will continue to refer to mother as "J.V." rather than "mother" in the first two paragraphs of this section. After that period, I will refer to her as "mother."

[2] On July 13, 2017, father was determined to be child 1's biological father by DNA testing.

law; that there was no less drastic alternative to removal; and that it was contrary to the best interest of the children to remain in the care, custody, and control of father. Father has remained in custody since his arrest.

On December 3, 2015, father was found guilty on all four counts by a Michigan jury. On January 15, 2016, he was sentenced to serve a minimum of fifteen years and a maximum of thirty years in prison. On August 15, 2017, the Michigan Court of Appeals affirmed father's convictions; on April 3, 2018, the Supreme Court of Michigan denied his application for leave to appeal. His earliest possible release date is June 1, 2030.

DCS informed mother that her children were in their custody. Mother still lived in Michigan, so they mailed her a copy of the permanency plan and the criteria for termination of parental rights. The children were placed in foster care in Tennessee. The court later ratified the permanency plans set by DCS.

DCS testified that mother made little to no progress on the permanency plan from August 2015 to April 2017. Mother never visited the children in person. She was offered transportation assistance to visit and attend hearings in Tennessee, but she routinely declined all offers. Mother attended some mental health treatment for her PTSD, but never on a consistent basis. Mother is not employed; she instead receives Social Security Supplemental Income for her PTSD and arthritis diagnoses. Furthermore, in 2015, mother had a baby who tested positive at birth for marijuana and opiates. As a result, DCS added an alcohol and drug assessment requirement to the permanency plan. Mother never completed the assessment.

Due to mother's lack of progress on the permanency plan, DCS testified that they sought a suitable placement for the children with another family member. DCS inquired into maternal grandfather's ability to take custody of the children. The request was denied because maternal grandfather lacked adequate space for the two children, and because he was already caring for another grandchild.

The children were ultimately placed with foster parents. The foster parents have bonded with the children and wish to adopt them should that opportunity become available. DCS testified that the children are thriving in their new environment and disrupting their present stability would be devastating. Accordingly, on May 31, 2017, DCS filed a petition to terminate both mother and father's parental rights. On May 9, 2018, a hearing was held.

The court heard telephonic testimony from father and mother, and in-person testimony from three representatives of DCS and the foster mother. Mother testified "that she would not contest the termination of her parental rights…and acknowledged that termination of her parental rights is in the best interest of the children." The DCS representatives testified regarding mother's failure to visit the children in person, her

failure to meet the requirements of the permanency plan, her failure to maintain adequate housing, and her failure to receive the mental health treatment that she needs for her PTSD. The court noted that a DCS representative testified that there were "many concerns regarding [mother's] stability, her history with [CPS[3]] in Michigan, and her decision to send the subject children to Tennessee to live with [father]." The court ultimately sustained termination of mother's parental rights

> upon the grounds of abandonment–failure to visit, substantial noncompliance with the permanency plan, and failure to assume custody or financial responsibility…

As to father, a DCS representative testified that it was difficult to maintain contact with father due to his incarceration in Michigan. Nonetheless, at father's request, DCS mailed him letters, pictures, and drawings from the children. Father testified regarding his convictions and that he is serving a lengthy prison sentence. He acknowledged that child 2 was less than eight-years old at the time of his sentencing. He testified that he has remained in custody since his initial arrest in 2015. Father testified that, prior to his incarceration, he was involved in the children's lives. He was at prenatal visits, doctor visits, and was present for the birth of both children. He testified that his attempts to establish paternity for child 1 were frustrated by mother, but that he never denied he was the child's father. Father has not seen the children since he was arrested. He testified that a no-contact order prevents him from maintaining a relationship with the children.

The court heard testimony evincing that the children have bonded with their foster parents. The children are purportedly thriving in their foster home and are receiving proper physical, dental, and mental health care. The children are confused regarding their family and have questions:

> [s]pecifically, the children have asked why their half-sibling [] looks so much like their mother []. [The social worker] explained that [father] had a child with [mother's] mother []. Therefore, [half-sibling] is not only the subject children's half-sibling, but also their aunt.

The foster parents have placed the children in therapy to professionally address some of these issues. Foster mother testified that the children have matured and responded well to the therapy. She testified that the children will still mention father from time to time when a memory is triggered.

The trial court held that DCS had proven by clear and convincing evidence the ground of ten (10) year sentence, pursuant to Tenn. Code Ann. § 36-1-113(g)(6), as to

---

[3] Child Protective Services.

child 2. The court held that DCS had proven by clear and convincing evidence the ground of persistent conditions, pursuant to Tenn. Code Ann. § 36-1-113(g)(3), as to both child 1 and child 2. The court held, pursuant to Tenn. Code Ann. § 36-1-113(i), that it is in the children's best interest for termination to be granted. As is relevant to the present appeal, the court held that:

> [the parents] have not made changes in their conduct or circumstances that would make it safe for the children to return home… Specifically, [father] remains incarcerated… [father] has not seen the children since being arrested on June 1, 2015, and he will not be eligible for release from incarceration until the children have reached adulthood… there is no meaningful relationship between [parents] and children… changing caregivers at this stage of the children's lives will have a detrimental effect on the children. The children have been placed together in the same pre-adoptive home since October 2015, where they are thriving and are bonded to the foster family…

(Paragraph numbering omitted.) The court terminated mother and father's parental rights. Father appeals.

## II.

> Whether the juvenile court erred in holding that the DCS had proven persistence of conditions by clear and convincing evidence.

> Whether the juvenile court erred in holding that the DCS had shown by clear and convincing evidence that termination of father's parental rights was in the best interest of the children.

## III.

A parent has a fundamental right, based on both the federal and state constitutions, to the care, custody, and control of his or her child. *Stanley v. Ill.*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996). While this right is fundamental, it is not absolute. The State may interfere with a parent's rights in certain circumstances. *In re Angela E.*, 303 S.W.3d at 250. Our legislature has listed the grounds upon which termination proceedings may be brought. Tenn. Code Ann. § 36-1-113(g) (2018). Termination proceedings are statutory, *In re Angela E.*, 303 S.W.3d at 250; *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004), and a parent's rights may be terminated only where a

statutory basis exists. ***Jones v. Garrett***, 92 S.W.3d 835, 838 (Tenn. 2002); ***In the Matter of M.W.A., Jr.***, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); ***In re Valentine***, 79 S.W.3d 539, 546 (Tenn. 2002). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." ***In re Bernard T.***, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted). Unlike the preponderance of the evidence standard, "[e]vidence satisfying the clear and convincing standard establishes that the truth of the facts asserted is highly probable." ***In re Audrey S.***, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005).

Once a ground for termination is established by clear and convincing evidence, the trial court conducts a best interest analysis. ***In re Angela E.***, 303 S.W.3d at 251 (citing ***In re Marr***, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005)). "The best interest[ ] analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." ***Id.*** at 254. The existence of a ground for termination "does not inexorably lead to the conclusion that termination of a parent's rights is in the best interest of the child." ***In re C.B.W.***, No. M2005-01817-COA-R3-PT, 2006 WL 1749534, at *6 (Tenn. Ct. App., filed June 26, 2006).

We are required to review all of the trial court's findings with respect to grounds and best interest. ***In re Carrington***, 483 S.W.3d 507, 525-26 (Tenn. 2016) ("[W]e hold that in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interest[ ], regardless of whether the parent challenges these findings on appeal.")

The Supreme Court has stated our standard of review:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate

parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*Id.* at 523-24 (internal citations omitted). "When a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to . . . the trial court's factual findings." *In re Adoption of S.T.D.*, No. E2007-01240-COA-R3-PT, 2007 WL 3171034, at *4 (Tenn. Ct. App., filed Oct. 30, 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co., Inc.*, 984 S.W.2d 912, 915 (Tenn. 1999)).

## IV.

### A.

Tennessee law permits a court to terminate parental rights when:

> [t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6). Accordingly, the court must hold by clear and convincing evidence that (1) father is sentenced to detention for ten or more years, and (2) the child at issue was under eight years of age when the sentence was entered.

Child 2 was born on April 9, 2009. On January 15, 2016, father was sentenced to a minimum of fifteen years in prison. His attempts to appeal the conviction have failed. Simple math dictates that child 2 was less than eight years old when father received his lengthy prison sentence. Therefore, clear and convincing evidence exists to support the trial court's finding as to terminating father's parental rights to child 2, pursuant to Tenn. Code Ann. § 36-1-113(g)(6).

### B.

Pursuant to Tenn. Code Ann. § 36-1-113(g)(3), parental rights may be terminated when: the conditions that led to the child's removal still persist preventing the child's safe return to the care of the parent, there is little likelihood that these conditions will be

remedied at an early date, and the continuation of the parent child relationship greatly diminishes the child's chances of integrating in a safe, stable, and permanent home. *See* Tenn. Code Ann. § 36-1-113(g). The child must have been removed from the home or the physical or legal custody of a parent/guardian for a period of six (6) months by a court order entered following a petition alleging that the child is a dependent and neglected child. *Id*.

On June 1, 2015, the children were removed from father's custody because he was arrested for criminal sexual conduct against the children's mother. As noted elsewhere in this opinion, at that time the children were left in Tennessee without a parent or legal guardian and were adjudicated dependent and neglected. The children have been in DCS' custody since that time. As of the May 31, 2017 petition, the children had been removed for well over the required six months.

Father has remained in custody since his arrest, and therefore the conditions that led to removal persist. There is little likelihood that these conditions will be remedied, because father was convicted and his attempts to appeal were unsuccessful. His earliest release date from prison is June 1, 2030. By that time, the younger of the two children will be twenty-one years old. Furthermore, father's lengthy incarceration renders him unable to provide the children with a home.

We hold, as a matter of law, that the evidence found by the trial court amounts to clear and convincing evidence supporting termination of father's parental rights, to child 1 and child 2, based on persistent conditions.

## V.

We now focus on whether termination is in the children's best interest. When considering the issue of "best interest," we are guided by the statutory factors set forth in Tenn. Code Ann. § 36-1-113(i). The list found therein is not exhaustive, and there is no requirement that all of the factors be present before a trial court can determine that termination of parental rights is in a child's best interest. *State Dep't of Children's Servs. v. B.J.N.*, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing *State Dep't of Children's Servs. v. P.M.T.*, No. E2006- 00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App., filed Sept. 15, 2006)).

In addition, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)). Once a parent has been found to be unfit, the interests of the parent and the child diverge. While the parent's interests do not evaporate upon a finding of unfitness, *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982), the focus of the proceedings shifts to the best interests of the child. *In re Marr*, 194 S.W.3d at 498.

Father testified that, prior to his arrest, he spent a significant amount of time bonding with the children. They would barbecue, visit and enjoy Tennessee's beautiful nature sites and parks, and sit down for family dinners at night. He taught the children how to ride bicycles. He argued that the reason he has been unable to keep up with the children's current likes and dislikes is that the court ordered him to cease contact with the children.

Father testified that he loves his children; we do not doubt this is true. Nonetheless, as noted above, our focus and paramount concern is not what is best for father, but instead, what is in the best interest of the children. As the trial court correctly found, while father may have previously had a relationship or bond with the children, this has been substantially altered by his lengthy incarceration. Father acknowledged at trial that he was not eligible for release from prison for at least twelve more years.

Father's incarceration precludes his ability to properly care and provide for the children. He will not be able to rectify or otherwise alter his circumstances until 2030, at the earliest; by that time the children will be adults. *See* Tenn. Code. Ann. § 36-1-113(i)(1). His incarceration substantially inhibits his ability to maintain regular visitation or other contact with the children. *See* Tenn. Code. Ann. § 36-1-113(i)(3). In addition, it is clear that changing the children's caretakers and physical environment at this point in their lives is almost certain to have a negative effect on the children's emotional and psychological wellbeing. *See* Tenn. Code. Ann. § 36-1-113(i)(5). Allowing the children to remain with their foster family, and opening up the potential for them to be adopted, provides the children with their best chance for future stability.

Accordingly, we hold, as a matter of law, that the evidence found by the trial court to be credible amounts to clear and convincing evidence that termination of father's parental rights is in the children's best interest.

## VI.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, R.W. Case remanded for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE